**MAYOR, COUNCILMEN AND CITIZENS OF CITY OF LIBERTY, Missouri, a Municipal Corporation, Respondent,**

v.

**James Collier BOGGESS, Appellant.**

**No. 23024.**

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1960.

Rufus Burrus, Independence, for appellant.

William E. Turnage, Liberty, for respondent.

MAUGHMER, Commissioner.

On February 6, 1959, the Clay County Circuit Court issued its mandatory injunction, restraining defendant James Collier Boggess from interfering with the possession of plaintiffs, hereinafter referred to as City, in and to Lots 163 and 164, Original Town of Liberty, Clay County, Missouri. Defendant has duly appealed.

In order to understand the present controversy it is necessary to present some previous occurrences which were litigated in the courts. These prior events are set out in sufficient detail to uncover the present dispute, but only to the extent necessary to evaluate and determine this particular lawsuit.

On February 1, 1957, the City passed an ordinance to appropriate defendant's lots for use as off-street parking. On June 10, 1957, commissioners awarded damages in the sum of $48,720 and defendant filed exceptions. On February 17, 1958, there was a jury verdict and judgment of $52,000 for defendant. Defendant appealed and the Supreme Court in Mayor, Councilmen and Citizens of City of Liberty v. Boggess, Mo.Sup., 321 S.W.2d 677, on March 9, 1959, approved the condemnation proceeding and affirmed the judgment, holding that both the city charter and the general city condemnation statutes applied. Prior to the Supreme Court ruling and on June 10, 1958, the City deposited $52,000 with the Circuit Court for the benefit of defendant and as payment of the jury award. Apparently defendant continued to retain possession of the property and did not withdraw any of the deposited fund. Defendant continued to receive rent from a lessee.

On August 4, 1958, the City filed its petition for injunction. Defendant's motion to dismiss, alleging the petition was insufficient, that another suit was pending (the Supreme Court appeal), and that plaintiff was entitled to neither possession nor equitable relief was overruled.

Defendant thereupon filed answer. Therein he (1) denied that plaintiff had duly and lawfully condemned the property (for various reasons, all of which were decided adversely to him by the Supreme Court, supra); (2) that the $52,000 deposit was not lawfully authorized by the City of Liberty, was paid from unauthorized funds by officers unauthorized to pay the same; (3) that "the deposit was inadequate and insufficient to discharge the verdict of the jury" and (4) a portion of the premises were under lease, lessee was in possession and was not a party to the condemnation proceeding.

Some evidence was heard but excepting only the testimony of a deputy city clerk, consisted of discussions between counsel into which the court entered from time to time. On February 6, 1959, the court entered its decree, mandatorily and permanently enjoining defendant on and after March 1, 1959, from interfering with the possession and use of the lots in question by the City or its agents.

Defendant's motion for new trial was overruled and the present appeal was seasonably perfected. On this appeal two points are urged. First, that since the jury verdict and judgment in the condemnation suit was entered February 17, 1958, the payment into court of only the amount of the award without any interest thereon was not a sufficient payment to either satisfy the judgment or entitle the City to possession and hence it was error for the court to grant the injunction. Second, the payment, as made, was not by ordinance authorized to be taken from any specific fund; that it was composed in part from funds from General Revenue, and in part from the Parking Meter Fund, was all unauthorized, improper and, therefore, not a proper discharge of the judgment. Defendant also asks that he be allowed interest at 6 percent from February 17, 1958, until the whole judgment is paid.

The record here shows that the entire $52,000 payment was finally made out of the Parking Meter Fund, although approximately $15,000 was "borrowed from General Revenue", but almost immediately thereafter replaced with proceeds from the sale of Government bonds held in the Parking Meter account. On June 8, 1958, a resolution or motion was unanimously passed by the City Council to the effect that the "City borrow $17,000 for the time needed to be able to proceed with the purchase of the Boggess lot". On December 24, 1958, a resolution was passed "to clear the buildings" from the Boggess property if possession is secured, and a contract to clear the buildings for the sum of $550 (the bid of one George Wegner) was approved.

This condemnation proceeding has been approved procedurally and finally by the Supreme Court (Mayor, Councilmen and Citizens of City of Liberty v. Boggess, supra). The amount of the jury award, $52,000, was deposited with the court for the benefit of defendant on June 10, 1958. On that date and continuously ever since defendant has had the right to withdraw this money. It represents payment of the principal amount of the award and judgment, which defendant secured against the City. That matter has been finally adjudicated. We shall not in this proceeding inquire, research or write upon the proper procedure which the City should follow in making payment of such a valid, final judgment against it. The payment has been resting with the court, available to defendant for more than eighteen months. It appears to be regular and we shall so treat it.

Now as to the matter of interest. Claims for and entitlement to interest on condemnation awards or judgments arise in various ways. In Arkansas-Missouri Power Company v. Hamlin, Mo.App., 288 S.W. 2d 14, and in State ex rel. State Highway S.W.2d 904, the Springfield Court of Appeals ruled first, that a condemnee was entitled to interest on the difference, if any, between the commissioners' award and the jury's determination of the damages; sec-

ond, such condemnee is also entitled to interest on the jury's award from the date of entry until the amount is paid into court, but third, where condemnee did not request inclusion of interest prior to the appeal and after the judgment had become final (insofar as the trial court was concerned) it was not subject to amendment nunc pro tunc and the appellate court would not allow interest because it had been waived. The opinion in the Hamlin case contains an exhaustive and learned review of the whole question and this review by reference is approved in the Galloway opinion. We recommend its examination by those interested in pursuing the question further. Because of public interest the Galloway case was certified to the Supreme Court. That court (State ex rel. State Highway Commission v. Galloway, Mo.Sup., 300 S.W.2d 480) approved the opinion generally, holding that the procedure followed by Galloway was not the appropriate way to recover interest, but not ruling on the question of entitlement generally.

In State ex rel. State Highway Commission v. Green, Mo.Sup., 305 S.W.2d 688, the Supreme Court again considered this question and overruled the Hamlin and Galloway (dicta) holdings relating to the power and duty of the trial court to add interest (305 S.W.2d at page 693) although indicating that the jury under appropriate instructions might allow interest from the date of the taking to the date of the jury's award. The court held, however, that the landowners were entitled to interest from the date of judgment. See, also, St. Louis Housing Authority v. Magafas, Mo.Sup., 324 S.W.2d 697, to the same effect.

Now returning to our case. Defendant has never and is not now claiming interest from the date of the commissioners' award to the date of the jury verdict and judgment, so we need not concern ourselves with that feature. Defendant does claim interest (1) from February 17, 1958, the date of the jury verdict and judgment to June 10, 1958, when the deposit was made and (2) from this latter date until the pres-ent time and until the judgment with accrued interest is fully paid.

In the condemnation proceedings defendant apparently never requested or suggested to either the trial court or to the appellate court that the judgment include interest or that he was entitled to interest.' Under the opinions referred to hereinabove it is clear, therefore, that he was not entitled to have interest added to the award or judgment itself by either the trial or the appellate court. Section 408.040, V.A.M.S. provides in part: "Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made by payment, accord or sale of property; * * *". In State ex rel. State Highway Commission v. Green, supra, 305 S.W.2d 692 the Supreme Court said: "In this connection it should be noted that there is no question but that the judgment herein will bear interest at six percent from the date of rendition as provided by statute. Section 408.040 (all statutory references herein are to RSMo 1949, V.A.M.S.)". Certainly the judgment herein bears interest at 6 percent from the date of rendition, that is, from February 17, 1958. But the specific question on this appeal is not—did the judgment bear interest—but rather, was the City entitled to possession of the property and was the court authorized to place it in possession through the medium of a mandatory injunction?

Section 88.063, V.A.M.S., one of the general provisions sections of Chapter 88 on Public Works and Condemnation, recites: "Any city shall have the right to advance the amount of damages awarded on the filing of the report of the commissioners assessing the damages and thereupon enter upon and take possession of such property and proceed with the public improvements for which such property is sought to be taken or damaged, * * *. Any subsequent proceedings' shall affect only the amount of compensation to be. al-

lowed for the property taken or damaged and shall not in any way interfere with the right of such city to the property sought to be acquired or damaged for public purposes". This statute is a plain declaration that upon advancement of "the amount of damages awarded" by the commissioners the City or condemnor shall have the right to "enter upon and take possession of such property and proceed with the public improvements" and any subsequent proceedings "shall affect only the amount of compensation" and "shall not in any way interfere with the right of such city to the property". The clear intent of the Legislature seems to be that after condemnation of the property and after there has been a tentative fixing of the damages, the City, upon payment of such amount, shall be entitled to possession and authorized to proceed at once with the improvement rather than await final determination of litigation on the subject. It does not follow that the City may not incur further liability. If exceptions are seasonably filed and a jury increases the commissioners' award, the City would be liable for such increase. In our particular case when the City deposited $52,000 with the court and when the injunction was issued, the condemnation case was pending in the Supreme Court on appeal. It was impossible at that time to say with certainty that the judgment would not be sent back for new trial or for further proceedings. The City might contend that under these circumstances and in accordance with Section 88.063, supra, it was entitled to possession upon deposit of the amount of the commissioners' award. However, since a larger award had been made by a jury, we think the City wisely determined to deposit this greater amount. While the statute speaks only of advancing or paying the commissioners' award, we think it is the only reasonable interpretation to hold it is likewise applicable to the jury award, certainly while that award or judgment is pending on appeal.

■ . We believe under the facts here present that on June 10, 1958, when it de-

posited $52,000 "the amount of damages awarded" the City was entitled to possession of the condemned property and was authorized to proceed with the improvement. It was likewise so entitled on February 6, 1959, when the injunction issued, and on March 1, 1959, the effective date of the injunction. This does not mean that the City, by such payment, thereby satisfied in full the judgment which has now become final, nor does it mean that under like circumstances the City might not have become further liable in "awarded damages" in the event defendant's appeal had been sustained and upon retrial a larger verdict secured. It does mean that upon the crucial dates here involved the City was entitled to possession and the injunction was properly issued.

■ In view of our ruling it is plain, if it was not already apparent, that defendant cannot *in this proceeding* recover interest on the judgment from the date of its entry to the date of deposit, nor thereafter. Such a recovery, even though defendant may be entitled to it, is not a prerequisite to the City's entitlement to either possession or the injunction. All that is involved here and all that we hold is that the City was entitled to possession and the injunction was properly issued.

The judgment and decree is therefore affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

BROADDUS and HUNTER, JJ., and SAM C: BLAIR, Special Judge, concur.

CAVE, P. J., not sitting.