Gregory SHELTON, Respondent,

v.

Ed VINYARD, State Interim
Fire Marshal, Appellant.

No. WD 52405.

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

Thomas J. Downey, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

HANNA, Presiding Judge.

Gregory Shelton appeals from a determination by the Administrative Hearing Commission (AHC) finding that his permits were subject to discipline because he possessed illegal fireworks. The Commission certified the record of its proceedings to the state fire marshal for a disciplinary hearing. The state fire marshal held a hearing on January 20, 1993, with both parties and their attorneys present. After the evidence was heard, the state fire marshal suspended Mr. Shelton's firework's licenses for three years. A petition for review was filed with the circuit court. The Honorable Byron L. Kinder reversed the decision of the AHC. Mr. Shelton is the party aggrieved by the agency decision and has filed the appellant's brief pursuant to Rule 84.05(e). The case involves the possession of fireworks described as M–80s. The decision of the Commission and the fire marshal are treated as one decision. Section 621.145, RSMo 1986.

Shelton owned three fireworks facilities located in Eagleville, Lancaster, and Rockport. He holds jobber and distributor permits. In May 1992, an individual identified as a former employee of Shelton's, went to the state fire marshal with what appeared to be an M–80. He explained that he had obtained it from Shelton's premises in Eagleville. On May 28, the Chief Inspector for the state fire marshal and three inspectors went to Shelton's Eagleville facility and conducted an inspection of the main facility and ten tractor

trailers located on the premises.[1] Shelton had the only key to the trailers and opened each for them. As he opened the tenth trailer he said, "Okay boys. This is the one with the product in it." The inspectors found an unmarked cardboard box with the flaps open. Inside were tubular salutes that they recognized as M–80s. When the inspector called the box to Shelton's attention, he told them that he had forgotten they were there. Shelton acknowledged to the chief inspector that he knew the items were M–80s. There were 1,137 M–80s in the box; equivalent to approximately forty-five sticks of dynamite. The inspectors removed two samples of each of the three different colored explosive devises, which subsequently were submitted and examined by a forensic chemist with the Missouri Highway Patrol. Each sample fit the guidelines used within the forensic community and it was determined that the fireworks were M–80s. Shelton testified that he acquired the M–80 fireworks in the late 1970s or early 1980s, and that he used them in special displays he conducted. The record indicates that he conducted public displays in 1986, 1987, and 1988 for the city of Bethany and in 1990 at his facility.

■ Shelton's first and fourth points on appeal challenge the Commission's finding that his possession of the M–80s was unlawful. He argues that the Commission's findings were not supported by competent and substantial evidence because the M–80s were special fireworks for use in public fireworks. He maintains that his distributor's license allowed him to deal in Class B special fireworks displays. Section 320.126.3, RSMo 1994. "Special fireworks" are defined as explosive devices which are designed to produce visible or audible effects and includes devices which contain more than two grains of explosive composition. Section 320.106(11), RSMo 1994. He further contends that the M–80s were affixed to a light pole at these public displays and thus, were used as aerial fireworks, not ground salutes.

The record must be viewed in the light most favorable to the Commission's decision,

*Walker v. Supervisor of Liquor Control,* 781 S.W.2d 113, 114 (Mo.App.1989), and it must be upheld if supported by substantial evidence upon the whole record. *Ragan v. Smarr,* 810 S.W.2d 718, 719 (Mo.App.1991). If the evidence could support either of two findings, this court is bound by the Commission's decision. *Lebedun v. Robinson,* 768 S.W.2d 219, 222 (Mo.App.1989).

Section 320.136 provides in pertinent part: "Ground salutes commonly known as ... M–80s ... and various other tubular salutes which exceed the limits set for class C common fireworks .... are expressly prohibited from shipment into, manufacture, possession, sale, and use within the state of Missouri *for any purpose.*" (emphasis added).

Class C common explosives are ground devices containing no more than 50 mg of explosive composition or aerial devices containing no more than two grains (130 mg) of explosive composition. Section 320.106(2), RSMo 1994. The fireworks which Shelton possessed were determined by a forensic chemist to contain between 2.6 to 3.3 grams (40–51 grains) of explosive composition. Fireworks which are ground salutes and contain more than 50 mg of explosive compound are illegal for any purpose under Missouri law. Section 320.136, RSMo 1994. The devices which Shelton possessed exceeded the amount of explosive content allowed for ground devices. Section 320.106(2), RSMo 1994.

The Highway Patrol's forensic chemist testified that each of the six explosive devices were M–80s pursuant to the guidelines regarding specific powder content, color of container, size, and minimum flash power. The Midwestern Forensic Science Association, which is a professional association of forensic scientists, including forensic chemists, defines an M–80 as an explosive device consisting of at least 38 grains (2.5 grams) of explosive in a tubular container approximately eleven-sixteenths inch in diameter and one to one and one-half inches long. The six devices tested ranged in powder weight from 40

---

**1.** Section 320.111.20, RSMo 1994, states that the state fire marshal and his deputies may conduct inspections of any premises and all portions of buildings where fireworks are being stored or being offered for sale. Licensees shall cooperate fully during any such inspection.

to 51 grains of flash powder. This court must "adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony," *St. Louis County v. State Tax Comm'n,* 406 S.W.2d 644, 649 (Mo. banc 1966), and accept those findings of the Commission.

The Commission specifically found that Shelton knew that these fireworks were M–80s and that he had set off 300 of them at various fireworks displays he had conducted. Shelton testified that he had set them off only after having secured them to a pole, arguing that this method converted them into aerial devices used in public displays.

The Commission concluded that the devices in question were "ground salutes," which, according to Webster's New Collegiate Dictionary at 1039, are firecrackers. It concluded that a ground salute is a firecracker that explodes on the ground and stated that the evidence showed that there was no means for these devices to propel themselves into the air.[2] Shelton's suggested use of the M–80s as "special fireworks" affixed to a light pole does not render their use legal because there is no language in the prohibition on M–80s which states that they may be legally used as "special fireworks." *See* Section 320.136, RSMo 1994. The Commission's interpretation is not clearly contrary to the reasonable expectations of the General Assembly. *House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992). The Commission's decision is supported by substantial evidence. Point denied.

■ Next, Shelton argues that his fireworks licenses were revoked without notice and a hearing. The fire marshall erroneously issued an order revoking Shelton's licenses without providing notice and a hearing. However, Shelton applied for and received a stay order from the circuit court. Subsequently, on January 20, 1993, after providing proper notice, a hearing was held in Jefferson City with all parties and counsel present. On February 26, 1993, the fire marshal revoked Shelton's permits. Under the circum-

stances, no prejudice resulted because of the fire marshal's error in its original ruling.

■ Shelton next contends that he should have received no more punishment than a written warning for possessing the illegal fireworks, citing to 11 CSR 40–3.010, which provides for a licensee to receive a written warning from the fire marshal for the first violation for selling fireworks with an excessive powder content. However, § 320.136 states that M–80s are expressly prohibited from possession within the state for any purpose. The Commission found that Shelton possessed M–80s. Section 320.116 grants the state fire marshal the discretion to revoke the permits of any license holder who has violated the provisions of §§ Sections 320.106 to 320.161 for a period of three years. Further, possession of illegal fireworks under § 320.136, which includes M–80s, may "result in the . . . revocation of the license(s) of the licensee." 11 C.S.R. 40–3.010(21). It is clearly within the discretion of the fire marshal to determine the appropriate penalty for a licensed fireworks' dealer who possesses M–80s. *Walker,* 781 S.W.2d at 116 (holding that the authority to determine the appropriate penalty is with the Supervisor of Liquor Control and not the Administrative Hearing Commission or the reviewing court). Shelton possessed over 1,000 M–80s in his trailer, enough to roughly equal forty-five sticks of dynamite. Point denied.

■ There are two other points raised on appeal which have been waived by the failure to brief and argue. In his brief, Shelton did not address either point. Missouri courts have repeatedly held that matters which are presented in points relied on, but which are not developed in argument are considered waived for appellate review. *Glidewell v. S.C. Mgmt., Inc.,* 923 S.W.2d 940, 951 (Mo. App.1996); *Papineau v. Baier,* 901 S.W.2d 190, 192 (Mo.App.1995). Nowhere in his argument does Shelton supply facts or argument which would support his points relied on. Points denied.

---

**2.** The Commission pointedly rejected Shelton's argument that he converted these ground salutes to aerial devices by fastening them to poles before he detonated them.

Circuit Court judgment is reversed and cause remanded for entry of judgment consistent with this opinion.

SMART and LAURA DENVIR STITH, JJ., concur.

